**Fill in this information to identify your case:**

Debtor 1: BRETT MICHAEL MARCINIK
  First Name / Middle Name / Last Name

Debtor 2: _____
(Spouse, if filing) First Name / Middle Name / Last Name

United States Bankruptcy Court for the: MIDDLE DISTRICT OF FLORIDA

Case number: 25-07369
(If known)

# Official Form 427
## Cover Sheet for Reaffirmation Agreement                        12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

### Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

**1. Who is the creditor?**
Truist Bank
Name of the creditor

**2. How much is the debt?**
On the date that the bankruptcy case is filed  $ 61,104.74
To be paid under the reaffirmation agreement  $ 60,102.60
$1,071.75 per month for 73 months (if fixed interest rate)

**3. What is the Annual Percentage Rate (APR) of interest?** (See Bankruptcy Code § 524(k)(3)(E).)
Before the bankruptcy case was filed  9.22 %
Under the reaffirmation agreement  9.22 %  ☑ Fixed rate  ☐ Adjustable rate

**4. Does collateral secure the debt?**
☐ No
☑ Yes.  Describe the collateral.  2024 RAM 2500 VIN: 3C6TR5EJ3RG287092
Current market value  $ N/A

**5. Does the creditor assert that the debt is nondischargeable?**
☑ No
☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable.

**6. Using information from Schedule I: Your Income** (Official Form 106I) **and Schedule J: Your Expenses** (Official Form 106J), fill in the amounts.

| | Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | | $ 5,793.36 | 6e. Monthly income from all sources after payroll deductions | $ 5,793.36 |
| 6b. Monthly expenses from line 22c of Schedule J | | $ 5,659.27 | 6f. Monthly expenses | -$ 5,659.27 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | | -$ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | -$ 0 |
| 6d. Scheduled net monthly income. Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | | $ 134.09 | 6h. Present net monthly income. Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | $ 134.09 |

Official Form 427        Cover Sheet for Reaffirmation Agreement        page 1

Debtor 1 __BRETT MICHAEL MARCINIK__    Case number (if known) __25-07369__
  First Name   Middle Name   Last Name

| 7. Are the income amounts on lines 6a and 6e different? | ☒ No <br> ☐ Yes. Explain why they are different and complete line 10. _____ |
|---|---|
| 8. Are the expense amounts on lines 6b and 6f different? | ☒ No <br> ☐ Yes. Explain why they are different and complete line 10. _____ |
| 9. Is the net monthly income in line 6h less than 0? | ☒ No <br> ☐ Yes. A presumption of hardship arises (unless the creditor is a credit union). Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10. |
| 10. Debtor's certification about lines 7-9 <br><br> If any answer on lines 7-9 is Yes, the debtor must sign here. <br><br> If all the answers on lines 7-9 are No, go to line 11. | I certify that each explanation on lines 7-9 is true and correct. <br><br> ✗ _____    ✗ _____ <br> Signature of Debtor 1                Signature of Debtor 2 (Spouse Only in a Joint Case) |
| 11. Did an attorney represent the debtor in negotiating the reaffirmation agreement? | ☐ No <br> ☒ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement? <br> ☐ No <br> ☒ Yes |

### Part 2:   Sign Here

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

✗ __/s/ Chiquitta T Jones_____    Date __2/6/2026__
   Signature                                                                             MM / DD / YYYY

__Chiquitta T Jones, Truist Creditor_____
Printed Name

Check one:

☐ Debtor or Debtor's Attorney
☒ Creditor or Creditor's Attorney

Form 2400A (12/15)

> Check one.
> ☐ **Presumption of Undue Hardship**
> ☒ **No Presumption of Undue Hardship**
> *See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT

### MIDDLE DISTRICT OF FLORIDA

In re __BRETT MICHAEL MARCINIK__,          Case No. __25-07369__
          *Debtor*
                                            Chapter __7__

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** __Truist Bank__

☐ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed: __Auto__
   *For example, auto loan*

B. ***AMOUNT REAFFIRMED***:   $__60,102.60__

   The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before __1/28/26__, which is the date of the Disclosure Statement portion of this form (Part V).

   *See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is __9.22__ %.

   *See definition of "Annual Percentage Rate" in Part V, Section C below.*

   This is a *(check one)* ☑ Fixed rate          ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

Form 2400A, Reaffirmation Documents                                                                                      Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☑  $ __1,071.75__ per month for __73__ months starting on __2/2/26__.

☐  Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

   Description:              2024 RAM 2500 VIN: 3C6TR5EJ3RG287092
   Current Market Value      $ __N/A__

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☑ Yes. What was the purchase price for the collateral?    $ __65,902.51__

☐ No. What was the amount of the original loan?          $ _____

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $ 61,104.74 | $ 60,102.60 |
| Annual Percentage Rate | 9.22 % | 9.22 % |
| Monthly Payment | $ 1,071.75 | $ 1,071.75 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II.   DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

   Check one.  ☒ Yes    ☐ No

B. Is the creditor a credit union?

   Check one.  ☐ Yes    ☒ No

Form 2400A, Reaffirmation Documents                                                                                     Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

   1.   Your present monthly income and expenses are:

      a. Monthly income from all sources after payroll deductions
      (take-home pay plus any other income)                                  $ 5,793.36

      b. Monthly expenses (including all reaffirmed debts except
      this one)                    $ 4,587.52

      c. Amount available to pay this reaffirmed debt (subtract b. from a.)    $ 1,205.84

      d. Amount of monthly payment required for this reaffirmed debt      $ 134.09

*If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

   2.   You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

      Check one of the two statements below, if applicable:

      [X]   You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

      [ ]   You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

      Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

      [ ]   You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

Form 2400A, Reaffirmation Documents                                                                              Page 4

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 20260206   Signature _____
                                         Debtor

Date _____   Signature _____
                                         Joint Debtor, if any

**Reaffirmation Agreement Terms Accepted by Creditor**:

Creditor   Truist Bank                              PO Box 1847, 100-50-01-51, Wilson, NC 27894-1847
              *Print Name*                                              *Address*

   Chiquitta T Jones                    /s/ Chiquitta T Jones              2/6/2026
*Print Name of Representative*                  *Signature*                  *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 02/06/2026   Signature of Debtor's Attorney _____

             Print Name of Debtor's Attorney   J. Christopher Crowder

Form 2400A, Reaffirmation Documents                                                                                                    Page 5

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.   DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A "lien" is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

Case 6:25-bk-07369-GER    Doc 12    Filed 02/09/26    Page 8 of 16

Form 2400A, Reaffirmation Documents                                                                                      Page 6

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

      i. **if the creditor is not a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

      ii. **if the creditor is a Credit Union,** your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 427).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form 2400B to do this.

Form 2400A, Reaffirmation Documents                                                                                                                  Page 7

## C. DEFINITIONS

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

LAW 553-FL-ARB-ea 1/24

# RETAIL INSTALLMENT SALE CONTRACT – SIMPLE FINANCE CHARGE
## (WITH ARBITRATION PROVISION)

| Buyer Name and Address | Co-Buyer Name and Address | Seller-Creditor (Name and Address) |
|---|---|---|
| BRETT MICHAEL MARCINIK | N/A | BONIFACE-HIERS MOTORS, LLC<br>800 S HARBOR CITY BLVD<br>Melbourne, FL 32901 |
| | Co-Buyer's Birth Month: N/A<br>Cell: N/A<br>Email: N/A | |

You, the Buyer (and Co-Buyer, if any), may buy the vehicle below for cash or on credit. By signing this contract, you choose to buy the vehicle on credit under the agreements in this contract. You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below. We will figure your finance charge on a daily basis at the Base Rate of __9.22__ % per year. The Truth-In-Lending Disclosures below are part of this contract.
You have thoroughly inspected, accepted, and approved the vehicle in all respects.

| New/Used/Demo | Year | Make and Model | Weight (lbs.) | Vehicle Identification Number | Primary Use For Which Purchased |
|---|---|---|---|---|---|
| Used | 2024 | Ram 2500 | N/A | 3C6TR5EJ3RG287092 | Personal, family, or household unless otherwise indicated below<br>☐ business<br>☐ agricultural  ☐ __N/A__ |

You agree that we advised you whether, based on seller's knowledge, the vehicle was titled, registered, or used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

## FEDERAL TRUTH-IN-LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. | Total Sale Price<br>The total cost of your purchase on credit, including your down payment of $2,475.00 is |
|---|---|---|---|---|
| 9.22 % | $ 24,124.49 | $ 65,902.51 | $ 90,027.00 | $ 92,502.00 |

(e) means an estimate

**Your Payment Schedule Will Be:**

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 84 | $1,071.75 | Monthly beginning 03/02/2025 |
| N/A | N/A | N/A |

Or As Follows:
N/A

**Late Charge.** If payment is not received in full within __10__ days after it is due, you will pay a late charge of __5__ % of each installment.
**Prepayment.** If you pay early, you may have to pay a penalty.
**Security Interest.** You are giving a security interest in the vehicle being purchased.
**Additional Information:** See this contract for more information including information about nonpayment, default, prepayment penalties, any required repayment in full before the scheduled date and security interest.

**WARRANTIES SELLER DISCLAIMS**
Unless the Seller makes a written warranty, or enters into a service contract within 90 days from the date of this contract, the Seller makes no warranties, express or implied, on the vehicle, and there will be no implied warranties of merchantability or of fitness for a particular purpose.
This provision does not affect any warranties covering the vehicle that the vehicle manufacturer may provide.

**Returned Payment Charge:** If any check or other payment instrument you give us is dishonored or any electronic payment you make is returned unpaid, you will pay a charge of $25 if the payment amount is $50 or less; $30 if the payment amount is over $50 but not more than $300; $40 if the payment amount is over $300; or such amount as permitted by law.

Florida documentary stamp tax required by law in the amount of $ __231.00__ has been paid or will be paid directly to the Department of Revenue.
Certificate of Registration No. __N/A__.

You assign all manufacturer rebates and cash back incentives used as a downpayment on this contract to seller. You agree to complete all documents required for assignment of rebates and incentives.

**Electronic Contracting and Signature Acknowledgment.** You agree that (i) this contract is an electronic contract executed by you using your electronic signature, (ii) your electronic signature signifies your intent to enter into this contract and that this contract be legally valid and enforceable in accordance with its terms to the same extent as if you had executed this contract using your written signature and (iii) the authoritative copy of this contract ("Authoritative Copy") shall be that electronic copy that resides in a document management system designated by us for the storage of authoritative copies of electronic records, which shall be deemed held by us in the ordinary course of business. Notwithstanding the foregoing, if the Authoritative Copy is converted by printing a paper copy which is marked by us as the original (the "Paper Contract"), then you acknowledge and agree that (1) your signing of this contract with your electronic signature also constitutes issuance and delivery of such Paper Contract, (2) your electronic signature associated with this contract, when affixed to the Paper Contract, constitutes your legally valid and binding signature on the Paper Contract and (3) subsequent to such conversion, your obligations will be evidenced by the Paper Contract alone.

T3120970092-DP3120970097 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.

Case 6:25-bk-07369-GER    Doc 12    Filed 02/09/26    Page 11 of 16

**ITEMIZATION OF AMOUNT FINANCED**

1. Cash Price (including $ 2,480.12 sales tax) .................................. $ 66,724.12 (1)
2. Total Downpayment =
   - Gross Trade-In Allowance ................................................. $ 25,000.00
   - Less Pay Off Made By Seller (e) ......................................... $ 37,525.00
   - Equals Net Trade In ...................................................... $ -12,525.00
   - + Cash .................................................................... $ 15,000.00
   - + Other N/A ............................................................... $ N/A
   - + Other N/A ............................................................... $ N/A
   - (If total downpayment is negative, enter "0" and see 5J below) ........... $ 2,475.00 (2)
3. Unpaid Balance of Cash Price (1 minus 2) ................................... $ 64,249.12 (3)
4. Predelivery Service Fees
   - A Predelivery Service Charge ............ $ 999.00
   - B Electronic Registration Filing Fee .... $ N/A
   - C STATE ................................. $ 259.00
   
   These charges represent costs and profit to the dealer for items such as inspecting, cleaning, and adjusting vehicles, and preparing documents related to the sale.
   
   Total Predelivery Service Fees ............................................. $ 1,258.00 (4)
5. Other Charges Including Amounts Paid to Others on Your Behalf
   (Seller may keep part of these amounts):
   - A Cost of Optional Credit Insurance Paid to Insurance Company or Companies.
     - Life ................................... $ N/A
     - Disability ............................. $ N/A ......................... $ N/A
   - B Vendor's Single Interest Insurance Paid to Insurance Company ........... $ N/A
   - C Other Optional Insurance Paid to Insurance Company or Companies ........ $ N/A
   - D Optional Gap Contract .................................................. $ N/A
   - E Official Fees Paid to Government Agencies .............................. $ N/A
   - F Government Documentary Stamp Taxes ..................................... $ 231.00
   - G Government Taxes Not Included in Cash Price ............................ $ N/A
   - H Government License and/or Registration Fees
     - License Fee ............................................................. $ 164.39
   - I Government Certificate of Title Fees ................................... $ N/A
   - J Other Charges (Seller must identify who is paid and describe purpose)

   | to | for | |
   |---|---|---|
   | FIFTH THIRD BANK | Prior Credit or Lease Balance (e) | $ N/A |
   | N/A | N/A | $ N/A |
   | N/A | N/A | $ N/A |
   | N/A | N/A | $ N/A |
   | N/A | N/A | $ N/A |
   | N/A | N/A | $ N/A |
   | N/A | N/A | $ N/A |
   | N/A | N/A | $ N/A |
   | N/A | N/A | $ N/A |
   | N/A | N/A | $ N/A |

   Total Other Charges and Amounts Paid to Others on Your Behalf ............ $ 395.39 (5)
6. Loan Processing Fee Paid to Seller (Prepaid Finance Charge) ............... $ N/A (6)
7. Amount Financed (3 plus 4 plus 5) .......................................... $ 65,902.51 (7)
8. Principal Balance (6+7) .................................................... $ 65,902.51 (8)

**OPTION:** ☐ You pay no finance charge if the Amount Financed, item 7, is paid in full on or before _____ N/A _____, Year _N/A_. SELLER'S INITIALS _N/A_

**OPTIONAL GAP CONTRACT.** A gap contract (debt cancellation contract) is not required to obtain credit and will not be provided unless you sign below and agree to pay the extra charge. If you choose to buy a gap contract, the charge is shown in Item 5D of the Itemization of Amount Financed. See your gap contract for details on the terms and conditions it provides. It is a part of this contract.

Term ___ N/A ___ Mos.       Name of Gap Contract ___ N/A ___
I want to buy a gap contract.
Buyer Signs X __A__                               N/A

**Agreement to Arbitrate:** By signing below, you agree that, pursuant to the Arbitration Provision on page 6 of this contract, you or we may elect to resolve any dispute by neutral, binding arbitration and not by a court action. See the Arbitration Provision for additional information concerning the agreement to arbitrate.
Buyer Signs X __B__  _BRETT MARCINIK_     Co-Buyer Signs X __B__ _N/A_

---

Used Car Buyers Guide. The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Spanish Translation: Guía para compradores de vehículos usados. La información que ve en el formulario de la ventanilla para este vehículo forma parte del presente contrato. La información del formulario de la ventanilla deja sin efecto toda disposición en contrario contenida en el contrato de venta.

**OPTIONAL SERVICE CONTRACTS**
You are not required to buy a service contract to obtain credit. Your choice of service contract providers for any service contracts you buy will not affect our decision to sell or extend credit to you.

**REJECTION OR REVOCATION**
If you are permitted under Florida's Uniform Commercial Code to reject or revoke acceptance of the vehicle and you claim a security interest in the vehicle because of this, you must either: (a) post a bond in the amount of the disputed balance; or (b) deposit all installment payments as they become due into the registry of a court of competent jurisdiction.

**SERVICING AND COLLECTION CONTACTS**
In consideration of our extension of credit to you, you agree to provide us your contact information for our servicing and collection purposes. You agree that we may use this information to contact you in writing, by e-mail, or using prerecorded/artificial voice messages, text messages, and automatic telephone dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you. You agree to allow our agents and service providers to contact you as agreed above.

You agree that you will, within a reasonable time, notify us of any change in your contact information.

**APPLICABLE LAW**
Federal law and the law of the state of Florida apply to this contract.

**NEGATIVE CREDIT REPORT NOTICE**
We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

**Insurance.** You may buy the physical damage insurance this contract requires from anyone you choose who is acceptable to us. You may also provide the physical damage insurance through an existing policy owned or controlled by you that is acceptable to us. You are not required to buy any other insurance to obtain credit unless the box indicating Vendor's Single Interest Insurance is required is checked below. Your choice of insurance providers will not affect our decision to sell you the vehicle or extend credit to you.

If any insurance is checked below, policies or certificates from the named insurance companies will describe the terms and conditions.

### Check the insurance you want and sign below:
### Optional Credit Insurance

☐ Credit Life:   ☐ Buyer   ☐ Co-Buyer   ☐ Both         ☐ Credit Disability:   ☐ Buyer   ☐ Co-Buyer   ☐ Both

Term N/A                                                  Term N/A
Premium: Credit Life $ N/A                                Credit Disability $ N/A
Insurance Company Name N/A                                Home Office Address N/A

Credit life insurance and credit disability insurance are not required to obtain credit. Your decision to buy or not to buy credit life insurance and credit disability insurance will not be a factor in the credit approval process. They will not be provided unless you sign and agree to pay the extra cost. If you choose this insurance, the cost is shown in Item 5A of the Itemization of Amount Financed. Credit life insurance is based on your original payment schedule. This insurance may not pay all you owe on this contract if you make late payments. Credit disability insurance does not cover any increase in your payment or in the number of payments.

If the box above is checked to indicate that you want credit life insurance, please read and sign the following acknowledgments:

1. You understand that you have the option of assigning any other policy or policies you own or may procure for the purpose of covering this extension of credit and that the policy need not be purchased from us in order to obtain the extension of credit.

X C   N/A              N/A          X C   N/A              N/A
Buyer                  Date         Co-Buyer               Date

2. You understand that the credit life coverage may be deferred if, at the time of application, you are unable to engage in employment or unable to perform normal activities of a person of like age and sex. (You need not sign this acknowledgement if the proposed credit life insurance policy does not contain this restriction.)

X D   N/A              N/A          X D   N/A              N/A
Buyer                  Date         Co-Buyer               Date

3. You understand that the benefits under the policy will terminate when you reach a certain age and affirm that your age is accurately represented on the application or policy.

X E   N/A              N/A          X E   N/A              N/A
Buyer                  Date         Co-Buyer               Date

### Other Optional Insurance

☐   N/A                           N/A          Premium $   N/A
    Type of Insurance             Term
Insurance Company Name & Address
                                  N/A

☐   N/A                           N/A          Premium $   N/A
    Type of Insurance             Term
Insurance Company Name & Address
                                  N/A

☐   N/A                           N/A          Premium $   N/A
    Type of Insurance             Term
Insurance Company Name & Address
                                  N/A

☐   N/A                           N/A          Premium $   N/A
    Type of Insurance             Term
Insurance Company Name & Address
                                  N/A

☐   N/A                           N/A          Premium $   N/A
    Type of Insurance             Term
Insurance Company Name & Address
                                  N/A

Other optional insurance is not required to obtain credit. Your decision to buy or not buy other optional insurance will not be a factor in the credit approval process. It will not be provided unless you sign and agree to pay the extra cost.
I want the insurance checked above.

X F   N/A              N/A          X F   N/A              N/A
Buyer Signature        Date         Co-Buyer Signature     Date

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGE CAUSED TO OTHERS IS NOT INCLUDED IN THIS CONTRACT.**

☐ **VENDOR'S SINGLE INTEREST INSURANCE (VSI insurance):** If the preceding box is checked, the Creditor requires VSI insurance for the initial term of the contract to protect the Creditor for loss or damage to the vehicle (collision, fire, theft, concealment, skip). VSI insurance is for the Creditor's sole protection. This insurance does not protect your interest in the vehicle. **You may choose the insurance company through which the VSI insurance is obtained.** If you elect to purchase VSI insurance through the Creditor, **the cost of this insurance is $** _____N/A_____ and is also shown in item 5B of the Itemization of Amount Financed. The coverage is for the initial term of the contract.
You authorize us to purchase Vendor's or Lender's Single Interest Insurance.

Buyer Signs X G   N/A              Co-Buyer Signs X G   N/A                Date: N/A

## OTHER IMPORTANT AGREEMENTS

1. **FINANCE CHARGE AND PAYMENTS**
    a. **How we will figure Finance Charge.** We will treat any Prepaid Finance Charge as fully earned on the date of this contract. We will figure the rest of the finance charge on a daily basis at the Base Rate on the unpaid part of your Principal Balance. Your Principal Balance is the sum of the Amount Financed and the Prepaid Finance Charge, if any.
    b. **How we will apply payments.** We may apply each payment to the earned and unpaid part of the Finance Charge, to the unpaid part of your Principal Balance and to other amounts you owe under this contract in any order we choose as the law allows.
    c. **How late payments or early payments change what you must pay.** We based the Finance Charge, Total of Payments, and Total Sale Price shown on page 1 of this contract on the assumption that you will make every payment on the day it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if you pay late and less if you pay early. Changes may take the form of a larger or smaller final payment or, at our option, more or fewer payments of the same amount as your scheduled payment with a smaller final payment. We will send you a notice telling you about these changes before the final scheduled payment is due.
    d. **You may prepay.** You may prepay all or part of your Principal Balance at any time. If the contract is paid in full within six months after the date you sign it, we may impose an acquisition charge, not exceeding $75, for services performed on your behalf for processing this contract. If you prepay, you must pay the earned and unpaid part of the Finance Charge and all other amounts due up to the date of your payment.
    e. **You may ask for a payment extension.** You may ask us for a deferral of the scheduled due date of all or any part of a payment (extension). If we agree to your request, we may charge you a $15 extension fee. You must maintain the physical damage insurance required by this contract (see 2.d.) during any extension. If you do not have this insurance, we may buy it and charge you for it as this contract says. You may extend the term of any optional insurance you bought with this contract to cover the extension if the insurance company or your insurance contract permits it, and you pay the charge for extending this insurance.
    If you get a payment extension, you will pay additional finance charges at the Base Rate on the amount extended during the extension. You will also pay any additional insurance charges resulting from the extension, and the $15 extension fee if we charge you this fee.

2. **YOUR OTHER PROMISES TO US**
    a. **If the vehicle is damaged, destroyed, or missing.** You agree to pay us all you owe under this contract even if the vehicle is damaged, destroyed, or missing.
    b. **Using the vehicle.** You agree not to remove the vehicle from the U.S. or Canada, or to sell, rent, lease, or transfer any interest in the vehicle or this contract without our written permission. You agree not to expose the vehicle to misuse, seizure, confiscation, or involuntary transfer. If we pay any repair bills, storage bills, taxes, fines, or charges on the vehicle, you agree to repay the amount when we ask for it.
    c. **Security Interest.**
    You give us a security interest in:
    - The vehicle and all parts or goods put on it;
    - All money or goods received (proceeds) for the vehicle;
    - All insurance, maintenance, service, or other contracts we finance for you; and
    - All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.
    This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle. You will not allow any other security interest to be placed on the title without our written permission.
    d. **Insurance you must have on the vehicle.**
    You agree to have physical damage insurance covering loss of or damage to the vehicle for the term of this contract. The insurance must cover our interest in the vehicle. You agree to name us on your insurance policy as loss payee. If you do not have this insurance, we may, if we choose, buy physical damage insurance. If we decide to buy physical damage insurance, we may either buy insurance that covers your interest and our interest in the vehicle, or buy insurance that covers only our interest. If we buy either type of insurance, we will tell you which type and the charge you must pay. The charge will be the premium for the insurance and a finance charge at the highest rate the law permits. If the vehicle is lost or damaged, you agree that we may use any insurance settlement to reduce what you owe or repair the vehicle.
    e. **What happens to returned insurance, maintenance, service, or other contract charges.** If we obtain a refund of insurance, maintenance, service, or other contract charges, you agree that we may subtract the refund from what you owe.

3. **IF YOU PAY LATE OR BREAK YOUR OTHER PROMISES**
    a. **You may owe late charges.** You will pay a late charge on each late payment as shown on page 1 of this contract. Acceptance of a late payment or late charge does not excuse your late payment or mean that you may keep making late payments.
    If you pay late, we may also take the steps described below.
    b. **You may have to pay all you owe at once.** If you break your promises (default), we may demand that you pay all you owe on this contract at once. Default means:
    - You do not pay any payment on time;
    - You give false, incomplete, or misleading information during credit application;
    - You start a proceeding in bankruptcy or one is started against you or your property; or
    - You break any agreements in this contract.
    The amount you will owe will be the unpaid part of your Principal Balance plus the earned and unpaid part of the Finance Charge, any late charges, and any amounts due because you defaulted.
    c. **You may have to pay collection costs.** If we hire an attorney to collect what you owe, you will pay the attorney's fee and court costs as the law allows. This includes any attorneys' fees we incur as a result of any bankruptcy proceeding brought by or against you under federal law.
    d. **We may take the vehicle from you.** If you default, we may take (repossess) the vehicle from you if we do so peacefully and the law allows it. If your vehicle has an electronic tracking device (such as GPS), you agree that we may use the device to find the vehicle. If we take the vehicle, any accessories, equipment, and replacement parts will stay with the vehicle. If any personal items are in the vehicle, we may store them for you. If you do not ask for these items back, we may dispose of them as the law allows.
    e. **How you can get the vehicle back if we take it.** If we repossess the vehicle, you may pay to get it back (redeem). We will tell you how much to pay to redeem. Your right to redeem ends when we sell the vehicle.
    f. **We will sell the vehicle if you do not get it back.** If you do not redeem, we will sell the vehicle. We will send you a written notice of sale before selling the vehicle.
    We will apply the money from the sale, less allowed expenses, to the amount you owe. Allowed expenses are expenses we pay as a direct result of taking the vehicle, holding it, preparing it for sale, and selling it. Attorney fees and court costs the law permits are also allowed expenses. If any money is left (surplus), we will pay it to you unless the law requires us to pay it to someone else. If money from the sale is not enough to pay the amount you owe, you must pay the rest to us. If you do not pay this amount when we ask, we may charge you interest at a rate not exceeding the highest lawful rate until you pay.
    g. **What we may do about optional insurance, maintenance, service, or other contracts.** This contract may contain charges for optional insurance, maintenance, service, or other contracts. If we demand that you pay all you owe at once or we repossess the vehicle, you agree that we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe or repair the vehicle. If the vehicle is a total loss because it is confiscated, damaged, or stolen, we may claim benefits under these contracts and cancel them to obtain refunds of unearned charges to reduce what you owe.

| Trade-In Vehicle | Trade-In Vehicle |
|---|---|
| Year 2023  Make Ford | Year N/A  Make N/A |
| Model Explorer | Model N/A |
| VIN 1FMSK7DH7PGA73973 | VIN N/A |
| Gross Trade-In Allowance $ 25,000.00 | Gross Trade-In Allowance $ N/A |
| Payoff Made by Seller $ 37,525.00 (e) | Payoff Made by Seller $ N/A (e) |
| Lienholder FIFTH THIRD BANK | Lienholder N/A |

You assign to Seller all of your rights, title and interest in such trade-in vehicle(s). Except as expressly stated to Seller in writing, you represent that your trade-in vehicle(s) has not been involved in an accident, has not had any major body damage or required any major engine repair, and was not previously used as a taxicab, police vehicle, short term rental or is a vehicle that is rebuilt or assembled from parts, a kit car, a replica, a flood vehicle, or a manufacturer buy back.

Buyer Initials H *BM*   Co-Buyer Initials H N/A

**Trade-In Payoff Agreement:** Seller relied on information from you and/or the lienholder or lessor of your trade-in vehicle to arrive at the trade-in payoff amount shown above and in item 2 of the itemization of Amount Financed as the Pay Off Made by Seller. You understand that the amount quoted is an estimate.
Seller agrees to pay the payoff amount shown above and in Item 2 to the lienholder or lessor of the trade-in vehicle, or its designee. If the actual payoff amount is more than the amount shown above and in Item 2 you must pay the Seller the excess on demand. If the actual payoff amount is less than the amount shown above and in Item 2 Seller will refund to you any overage Seller receives from your prior lienholder or lessor. Except as stated in the "NOTICE" below, any assignee of this contract will not be obligated to pay the Pay Off Made by Seller shown above and in Item 2 or any refund.

Buyer Signature X  *BRETT MARCINIK*   Co-Buyer Signature X  N/A

**SELLER'S RIGHT TO CANCEL** - If Buyer and Co-buyer sign here, the provisions of the Seller's Right to Cancel section below, which gives the Seller the right to cancel if Seller is unable to assign this contract within ____N/A____ days, will apply. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller a charge of $ ____N/A____ per day from the date of cancellation until the vehicle is returned or repossessed.

x J  N/A                x J  N/A
Buyer Signs             Co-Buyer Signs

**Seller's Right to Cancel**
a. Seller agrees to deliver the vehicle to you on the date this contract is signed by Seller and you. You understand that it may take a few days for Seller to verify your credit, locate financing for you on the exact terms shown on page 1 of this contract, and assign this contract to a financial institution. You agree that Seller has the number of days stated above to assign this contract. You agree that if Seller is unable to assign this contract within this time period to any one of the financial institutions with whom Seller regularly does business under an assignment acceptable to Seller, Seller may cancel this contract. Seller's right to cancel this contract ends upon assignment of this contract.
b. If Seller elects to cancel per Paragraph a above, Seller will give you written notice (or in any other manner in which actual notice is given to you). In that event, you may have the option of negotiating and signing a new contract with different financing terms (for example, a larger down payment, a higher annual percentage rate, a required cosigner, etc.) or you may pay with alternate funds arranged by you.
c. Upon receipt of the notice of cancellation, you must return the vehicle to Seller within 48 hours in the same condition as when sold other than reasonable wear for the time you had it. If Seller has already sold the Trade-in, the Seller will pay you the proceeds of the sale less any reasonable expenses incurred in connection with holding, preparing, reconditioning and selling the Trade-in and any prior credit or lease balance paid by Seller to a prior lienholder or lessor on your behalf.
d. If you do not return the vehicle within 48 hours after receipt of the notice of cancellation, you agree that Seller may use any lawful means to take it back (including repossession if done peacefully) and you will be liable for all expenses incurred by Seller in taking the vehicle from you, including reasonable attorney's fees. If you fail to return the vehicle within 48 hours after receipt of the notice of cancellation, you agree to pay Seller the charge shown in the Seller's Right to Cancel provision above for each day you do not return the vehicle after receipt of the notice of cancellation.
e. While the vehicle is in your possession, all terms of this contract, including those relating to use of the vehicle and insurance for the vehicle, are in full force and you assume all risk of loss or damage to the vehicle. You must pay all reasonable costs for repair of any damage done to the vehicle while the vehicle is in your possession. Seller may deduct from any consideration due to you under paragraph c. above Seller's reasonable costs to repair the vehicle and any daily charges you incur if you fail to return the vehicle within 48 hours after receipt of the notice of cancellation. If Seller cancels this contract, the terms of this Seller's Right to Cancel provision (including those above) remain in effect even after you no longer have possession of the vehicle.

**NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

The preceding NOTICE applies only to goods or services obtained primarily for personal, family or household use. In all other cases, Buyer will not assert against any subsequent holder or assignee of this contract any claims or defenses the Buyer (debtor) may have against the Seller, or against the manufacturer of the vehicle or equipment obtained under this contract.

(Page 6 of 6) T3120970092-DP3120970097 - THIS IS A CUSTOMER COMPLETED COPY OF THE SIGNED ELECTRONIC FORM HELD BY ROUTEONE LLC.

Case 6:25-bk-07369-GER Doc 12 Filed 02/09/26 Page 15 of 16

## ARBITRATION PROVISION
### PLEASE REVIEW - IMPORTANT - AFFECTS YOUR LEGAL RIGHTS

1. **EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE BETWEEN YOU AND US DECIDED BY ARBITRATION AND NOT IN COURT OR BY JURY TRIAL.**
2. **IF A DISPUTE IS ARBITRATED, YOU WILL GIVE UP YOUR RIGHT TO PARTICIPATE AS A CLASS REPRESENTATIVE OR CLASS MEMBER ON ANY CLASS CLAIM YOU MAY HAVE AGAINST US INCLUDING ANY RIGHT TO CLASS ARBITRATION OR ANY CONSOLIDATION OF INDIVIDUAL ARBITRATIONS.**
3. **DISCOVERY AND RIGHTS TO APPEAL IN ARBITRATION ARE GENERALLY MORE LIMITED THAN IN A LAWSUIT, AND OTHER RIGHTS THAT YOU AND WE WOULD HAVE IN COURT MAY NOT BE AVAILABLE IN ARBITRATION.**

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this Arbitration Provision, any allegation of waiver of rights under this Arbitration Provision, and the arbitrability of the claim or dispute), between you and us or our employees, agents, successors or assigns, which arises out of or relates to your credit application, purchase or condition of this Vehicle, this contract or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election, be resolved by neutral, binding arbitration and not by a court action. If federal law provides that a claim or dispute is not subject to binding arbitration, this Arbitration Provision shall not apply to such claim or dispute. Any claim or dispute is to be arbitrated by a single arbitrator only on an individual basis and not as a plaintiff in a collective or representative action, or a class representative or member of a class on any class claim. The arbitrator may not preside over a consolidated, representative, class, collective, injunctive, or private attorney general action. You expressly waive any right you may have to arbitrate a consolidated, representative, class, collective, injunctive, or private attorney general action. You or we may choose the American Arbitration Association (www.adr.org) or National Arbitration and Mediation (www.namadr.com) as the arbitration organization to conduct the arbitration. If you and we agree, you or we may choose a different arbitration organization. You may get a copy of the rules of an arbitration organization by contacting the organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law and the applicable statute of limitations. The arbitration hearing shall be conducted in the federal district in which you reside unless the Seller-Creditor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this transaction was originated. We will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee up to a maximum of $5,000, unless the law or the rules of the chosen arbitration organization require us to pay more. You and we will pay the filing, administration, service, or case management fee and the arbitrator or hearing fee over $5,000 in accordance with the rules and procedures of the chosen arbitration organization. The amount we pay may be reimbursed in whole or in part by decision of the arbitrator if the arbitrator finds that any of your claims is frivolous under applicable law. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this Arbitration Provision, then the provisions of this Arbitration Provision shall control. Any arbitration under this Arbitration Provision shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.) and not by any state law concerning arbitration. Any award by the arbitrator shall be in writing and will be final and binding on all parties, subject to any limited right to appeal under the Federal Arbitration Act.

You and we retain the right to seek remedies in small claims court for disputes or claims within that court's jurisdiction, unless such action is transferred, removed or appealed to a different court. Neither you nor we waive the right to arbitrate any related or unrelated claims by filing any action in small claims court, or by using self-help remedies, such as repossession, or by filing an action to recover the vehicle, to recover a deficiency balance, or for individual or statutory public injunctive relief. Any court having jurisdiction may enter judgment on the arbitrator's award. This Arbitration Provision shall survive any termination, payoff or transfer of this contract. If any part of this Arbitration Provision, other than waivers of class rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable. You agree that you expressly waive any right you may have for a claim or dispute to be resolved on a class basis in court or in arbitration. If a court or arbitrator finds that this class arbitration waiver is unenforceable for any reason with respect to a claim or dispute in which class allegations have been made, the rest of this Arbitration Provision shall also be unenforceable.

---

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this contract and retain its right to receive a part of the Finance Charge.*

---

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be in writing and we must sign it. No oral changes are binding.   Buyer Signs **X K** _BRETT MARCINIK_   Co-Buyer Signs **X K** _N/A_

If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For example, we may extend the time for making some payments without extending the time for making others.

**See the rest of this contract for other important agreements.**

---

**NOTICE TO THE BUYER:** a) Do not sign this contract before you read it or if it contains any blank spaces. b) You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights.

You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You acknowledge that you have read all pages of this contract, including the arbitration provision above, before signing below. You confirm that you received a completely filled-in copy when you signed it.

Buyer Signs **X L** _BRETT MARCINIK_   Date 01/17/2025   Co-Buyer Signs **X L** N/A   Date N/A

If the "business" use box is checked in "Primary Use for Which Purchased": Print Name N/A   Title N/A

Co-Buyers and Other Owners — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle but does not have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here **X N**   N/A   Address N/A

Seller Signs BONIFACE-HIERS MOTORS, LLC   Date 01/17/2025   By **X L** _William Laurent_   Title Finance Manager

Seller assigns its interest in this contract to Truist Bank   (Assignee) under the terms of Seller's agreement(s) with Assignee.

☐ Assigned with recourse   ☒ Assigned without recourse   ☐ Assigned with limited recourse

Seller   BONIFACE-HIERS MOTORS, LLC   By **M**   _William Laurent_   Title Finance Manager

---

*TRUE AND ACCURATE COMPLETED COPY - UCC NON-AUTHORITATIVE COPY*



Collateral Management Solutions
9750 Goethe Road | Sacramento, CA 95827
www.Vitu.com

# Truist Bank

## Lien and Title Information

### Account Information

| | | | |
|---|---|---|---|
| **Account Number** | | **Financed Date** | 1/17/2025 |
| **Loan Number** | | **Perfected Date** | 2/12/2025 |
| **Branch** | | **Payoff Date** | |
| **Borrower 1** | BRETT M MARCINIK | **Dealer ID** | 38559 |
| **Borrower 2** | | **Dealer** | BONIFACE-HIERS CHEVROLET LLC |
| **Borrower Address** | | **Dealer Address** | 800 S HARBOR CITY BLVD MELBOURNE, FL 32901 |

### Lienholder

| | |
|---|---|
| **ELT Lien ID** | 0216005154 |
| **Lienholder** | Truist Bank |
| **Lienholder Address** | PO Box 315 Wilmington, OH 45177 |
| **Lien Release Date** | |

### Vehicle and Titling Information

| | | | |
|---|---|---|---|
| **VIN** | 3C6TR5EJ3RG287092 | **Issuance Date** | 2/10/2025 |
| **Title Number** | 0155751183 | **Received Date** | 2/12/2025 |
| **Title State** | FL | **ELT/Paper** | ELECTRONIC |
| **Year** | 2024 | **Odometer Reading** | |
| **Make** | RAM | **Branding** | |
| **Model** | | | |
| **Owner 1** | BRETT MICHAEL MARCINIK | | |
| **Owner 2** | | | |
| **Owner Address** | | | |

**Printed:** Friday, February 6, 2026 1 54 46 PM PST